Affirmed and Memorandum Opinion filed February 15, 2007








Affirmed and Memorandum Opinion filed February 15, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01169-CR

____________

 

PETER JOHN NOYES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 1281110

 



 

M E M O R A N D U M   O P I N I O N

Peter John Noyes appeals his conviction for the misdemeanor
offense of driving while intoxicated (ADWI@).  In his sole
point of error, appellant contends the trial court abused its discretion in
refusing to admit the results of an out-of-court experiment as proof the
instrument used to test his breath was inaccurate as applied to his particular
physiology.  We affirm.








Officer Aguilar stopped appellant at approximately 1:15
a.m., for driving 61 m.p.h. in a 35 m.p.h. zone of Westheimer Road.  When he
approached the vehicle, Aguilar observed appellant=s eyes were
bloodshot and there was a strong odor of alcohol.  When asked, appellant
admitted he had been drinking.  Aguilar then asked appellant to exit the car. 
Aguilar proceeded to administer several field sobriety tests.  After appellant
failed four of the five tests, Aguilar arrested him.

Aguilar drove appellant to his substation where Officer
Gonzales, a certified breath test operator, administered a breath test. 
Appellant registered a 0.141 blood alcohol content (ABAC@) at 2:26 a.m.,
and a 0.143 BAC at 2:28 a.m., approximately two and one half hours after
appellant claims to have stopped drinking.  Both scores exceeded the legal
limit to drive a car.  Appellant was charged with misdemeanor DWI, to which he
pled not guilty. 

During the trial, appellant testified that on the night in
question, he consumed three Alite@ beers at a bar in
the Galleria area.  He claimed he drank the first beer at 9 p.m., the second at
10 p.m., and the third at approximately 11 to 11:15 p.m.[1] 
The timing of his consumption was, according to appellant, planned so he would
not become intoxicated.  He stated he had had nothing to eat since a barbeque
lunch at noon that day.  He also stated he felt fine to drive when he left the
bar.  He further testified he thought he left around midnight.[2]


Appellant next called Dr. Lykissa as an expert witness to
testify about an out-of-court experiment conducted on appellant.  After an
extensive voir dire examination of Lykissa concerning the equipment and
techniques used, the trial court sustained the State=s objection to
admitting the results of the experiment as evidence.  The jury convicted
appellant and assessed a punishment of three days in jail and an $800 fine. 
Appellant brings this appeal.








We review the exclusion of evidence under an abuse of
discretion standard.  Salazar v. State, 127 S.W.3d 355, 359 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d).  We will not reverse the trial court=s ruling so long
as it is within the zone of reasonable disagreement.  Id.  To be
admissible, an experiment need not be made under identical conditions of the
event.  Ginther v. State, 672 S.W.2d 475, 476 (Tex. Crim. App. 1984). 
Any dissimilarities go to the weight and not to the admissibility of the
experiment.  Id.  However, the proponent  must affirmatively show the
proposed experiment was conducted under substantially similar circumstances and
conditions.  Id.

The State conducted a Rule 705(b) voir dire examination of
Lykissa to determine, among other things, how the experiment was conducted.  Tex. R. Evid. 705(b).  Lykissa
supervised and observed the breath tests, but did not administer them.  The lab
tested appellant first, to register a negative test indicating no alcohol in
his breath.  Then, appellant was given two Alite@ beers to consume
in thirty minutes.  Thirty minutes after the last drink, appellant registered a
.186 BAC.  At that point, Lykissa felt a blood and urine sample should be drawn
Aimmediately.@  He did those
himself.  The blood sample tested at .06 BAC and the urine sample at .048 BAC. 
Lykissa testified he expected a closer alignment between the tests.  Lykissa
believed the difference between the breath, blood, and urine tests to be Aidiosyncratic.@  The lab
continued to take breath tests every thirty minutes, but never repeated the
blood or urine tests.  When asked to expand on his concerns as to the accuracy
of the breath test on appellant=s physiology, he stated he had a Ahypothesis@ but for him to
talk about it would be Ahearsay.@  The record
contains no basis or explanation of his hypothesis pertaining to appellant=s physiology that
would cause what he considered to be an abnormal reading on the breath test.








The State objected to the experiment not being
substantially similar to the police tests, based on several dissimilarities.[3] 
However, we focus on the consumption schedule used by the experiment.  As
alcohol is consumed, it passes from the stomach and intestines into the blood,
a process referred to as absorption.  Mata v. State, 46 S.W.3d 902, 909
(Tex. Crim. App. 2001) (citing Nat=l Inst. on Alcohol Abuse
& Alcoholism, Alcohol Alert, AAlcohol Metabolism,@ No. 35
(Jan.1997)).  The absorption of alcohol into the body may be variable and may
continue over a long period of time.  Id. at 912 (citing Y. Al-Lanqawi
et al., Ethanol Kinetics: Extent of Error in Back Extrapolation Procedures,
34 Brit. J. of Clinical Pharmacology 316, 320 (1992)).  The length of time
necessary for alcohol to be absorbed depends on a variety of factors including
the presence and type of food in the stomach, the drinking pattern, and the
amount consumed.  Id. at 911 (citing Alan Jones, et al., Peak Blood
Ethanol Concentration and the Time of Its Occurrence After Rapid Drinking on an
Empty Stomach, 36 J. of Forensic Sci. 376, 381 (1991)).  The time period of
alcohol consumption is also an important factor.  Id. at 909 (citing
Rodney Gullberg, Variation in Blood Alcohol Concentration Following the Last
Drink, 10 J. of Police Sci. & Admin. 289, 289 (1982)).








Here, the experiment did not attempt to replicate the
drinking pattern appellant testified he followed the night in question. 
Appellant claimed he drank three beers that night. Appellant drank two beers
during the experiment.  On the night in question, appellant claimed he
stretched the beers out over a long time period.  The experiment required him
to drink two beers in thirty minutes.  The police gave appellant the breath
tests approximately two and one-half hours after he claimed to have stopped
drinking.  In the experiment, the first test was given thirty minutes after he
stopped drinking.  Appellant last ate barbeque at noon the day in question. 
The record is silent as to what and when appellant ate prior to the
experiment.  Differing absorption rates based on differing factors logically
could cause differing results.  Lykissa testified he was unaware appellant
claimed to have stopped drinking two and one-half hours before the breath tests
given by the police.  Although Lykissa did not articulate his theory, he
admitted that even if his theory was correct, appellant would not have tested
over the legal limit as he did the night in question, two and one-half hours
after he allegedly stopped drinking.  

Appellant failed to affirmatively show the proposed
experiment was substantially similar to the incident and, thus, the trial court
did not abuse its discretion in excluding the results.  We overrule appellant=s sole point of
error and affirm the trial court=s ruling.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 15, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant told Officer Aguilar he had been drinking
at the office, and had his last beer at 10 p.m.  Under oath, appellant testified
the discrepancies were due to nervousness.





[2]  Appellant testified he said goodbye in the parking
lot to the people he was with, and drove down West Alabama to Westheimer and
out to the cross street close to Beltway 8 where he was pulled over.  He stated
Westheimer went straight to his house, which is about ten miles from the
Galleria.  Appellant was stopped around 1:15 a.m., and using his estimates,
less than ten miles from the bar.





[3]  The State first objected to Lykissa=s testimony, arguing he was not qualified as an
expert.  The State objected to the experiment not being substantially similar
because the experiment used a different model of the breath test machine, a
different brand of beer, a different amount of beer, a different time frame for
consumption, and no evidence as to the amount of food in appellant=s stomach.  The State also objected to a lack of
evidence showing the machine used was calibrated properly.  Finally, the State
objected to the fact that the person who conducted the experiment was not in
court to testify.